(36 South. 32.)

No. 15,138.

STATE ex rel. BURKE et al. v. FOSTER, Judge, et al.

(Feb. 15, 1904.)

ELECTIONS — NOMINATIONS — VACANCY BY DEATH—POWER OF COURT—DISPUTES—BOARD OF CONTESTS—JURISDICTION.

1. Where a candidate nominated at a primary election died, and the executive committee of the party filled the vacancy by nominating another candidate, *held*, that the district court of the parish is without jurisdiction to enjoin the committee from filing a certificate of the nomination in the office of the Secretary of State.

2. The decision of disputes as to party nominations rests with the party whose nomination is claimed, in the absence of statutory regulations to the contrary. The jurisdiction of courts in such matters is purely statutory. Act No. 152, p. 266, of 1898, confers no jurisdiction whatever on the courts, but creates a board of contests, whose decision is made final on all questions within its cognizance.

Hence the determination of the dispute as to the nomination complained of rests either with the party or board of contests, and the courts are without jurisdiction in the premises.

3. Article 109 of the Constitution of 1898, vesting original jurisdiction in district courts in all cases where "civil or political rights are involved," has no application to a dispute as to a party nomination. The Trainor Case (recently decided by this court) 35 South. 838,[1] was one where there was a threatened interference in the conduct of a primary election by subordinate committee without authority in the premises.

(Syllabus by the Court.)

Application by the state, on the relation of Porteus R. Burke, chairman Democratic parish executive committee and others, for writ of prohibition to T. Don Foster, judge of the Nineteenth Judicial District Court, and others. Writ granted.

Burke & Burke and Weeks & Weeks, for relators. T. Don Foster, in pro. per. Voorhies & Schwing and Andrew Thorpe, for respondent Willie S. Brown.

LAND, J. In October, 1903, C. C. Palfrey, Jr., was nominated at a primary election as the candidate of the Democratic party for the office of marshal of the city court of New Iberia. Palfrey died subsequently to his nomination, and thereupon the Democratic executive committee of the parish appointed Alexander Chargois as the party candidate for said office.

In January, 1904, Willie S. Brown, a Democratic resident voter of the ward in which said primary election was held, and an aspirant for said office, presented a petition to the judge of the district court for said parish, in which he represented that the action of the said executive committee was illegal, arbitrary, and contrary to party precedents and the law regulating primary elections, and prayed for the issuance of writs of injunction against the president and secretary of said committee, inhibiting them to carry into

[1] Ante, p. 713.

effect the resolution by which Alexander Chargwis was selected and appointed to be the Democratic candidate for said office. The injunction was granted as prayed for. Defendants appeared and excepted to the jurisdiction of the court over the subject-matter set forth in the petition, and averred "that under the law and statutes of the state of Louisiana the matter is one that belongs to a different tribunal."

This exception was overruled by the court, and thereupon defendants therein filed in this court their petition for writs of prohibition against the district judge and the plaintiff in said suit. This court thereupon ordered that said parties show cause why writs of prohibition should not be issued as prayed for.

Relators contend that in making the nomination and filling the vacancy as aforesaid the parish executive committee acted conformably to section 58 of Act No. 152, p. 281, of 1898, and that any redress or relief that said Brown is entitled to is provided for under section 55 (page 281) of said act as amended by Act No. 132, p. 199, of 1900.

This contention is denied by respondents, who maintain that the executive committee had no authority to fill the vacancy.

Section 58 of Act No. 152, p. 281, of 1898, reads as follows:

"That in case a candidate who has been duly nominated under the provisions of this act shall cause his name to be withdrawn from nomination as provided in section 57 or shall be found by the officers named in section 55 to have been irregularly nominated, the vacancy may be supplied by the political party or other persons making the original nomination in the same manner in which the original nomination was made, provided, that the new nomination be filed with the Secretary of State before the four or three weeks prior to the day of election as required by section 54 (page 280) of this act. * * * In case of death, and in such case only, this vacancy may be supplied if the nomination was made by a convention or caucus in such manner as the convention or caucus has previously provided for the purpose or in case of no such previous provision than (then) by regularly chosen general or executive committee representing the political party or persons holding such convention or caucus, provided such new certificate of nomination or

nomination paper shall be filed with the Secretary of State, fourteen full days before the day of election. * * *"

Act No. 133, p. 203, of 1900, known as the primary election law, contains no provisions on the subject of withdrawal of nominations or irregular nominations or vacancies caused by death. Section 16, p. 208, of said act vests in the state central committee and the various district and parish committees calling primary elections power to adopt such rules and regulations for the conduct and government thereof as they may deem fit.

The same Legislature which enacted the primary election law, also at the same session, amended and re-enacted certain sections of Act No. 152, p. 266, of 1898. The two acts are numbered respectively, 132 and 133, and were approved on the same day. Act No. 132, p. 199, after providing the form of certificates of nomination and of nominating papers, and requiring the same to be filed with the Secretary of State, proceeds to create a "contest board" to consider and determine objections to the regularity of such certificates and papers, their decision to be final.

The board is specially authorized to determine any question as to the proper party designation of candidates, and where there are a greater number of certificates of nomination bearing the same party designation than there are persons to be elected to a particular office the board is empowered to determine which of said candidates, if any, is entitled to the party designation.

Under Act No. 152, p. 266, of 1898, as amended, the nominations may be made by party convention or caucus or by a certain number of voters.

But it is well known that certificates of nomination by primary election are filed with the Secretary of State, and treated in the same manner as certificates of nomination made in accordance with the methods prescribed by statute. It cannot be doubted that under the act of 1898 the parish executive committee has the right to fill a vacancy caused by the death of a nominee where no provision has been made by the party caucus or convention making the nomination to meet the contingency. It is contended by respondents that this right does not exist where the party representatives have ordered nominations to be made by primary election in which

the voters take the place of the nominating caucus or convention.

After mature deliberation, we have come to the conclusion that the question is within the jurisdiction of the board of contests, which, upon objection made, must necessarily decide whether or not the certificate was issued by the proper representatives of the party.

The statute makes it the duty of the board to pass on conflicting certificates of nomination purporting to have been issued by the same party, to determine what candidates are entitled to party designations, and generally to decide all objections to the regularity of certificates of nomination and nomination papers.

No certificate can be regular if issued without proper authority emanating from a political party.

The statute affords a speedy method of determining the political question involved in this litigation.

"The jurisdiction of the courts in these matters is as purely statutory as that of public officers, and must be invoked in the manner prescribed by law. The courts will pass only upon matters of which they have a clear grant of jurisdiction." 10 Amer. & Eng. Ency. Law (2d Ed.) pp. 660, 661.

Hence, as far as party nominations are concerned, the decision of disputes rests with the party whose nomination is claimed. The Legislature may invest jurisdiction in certain public officers or the courts. If such jurisdiction be not vested, the decision rests with the party, and the courts cannot interfere in the matter. While article 109 of the Constitution of 1898 vests in district courts original jurisdiction in all cases where "civil or political rights" are involved, we are of opinion that this grant does not include the question of a party nomination, which must be determined by the party itself or by certain public officials as provided by statute. The Trainor Case (recently decided by this court) ante, p. 713, 35 South. 838, is not in point.

It is therefore ordered, adjudged, and decreed that peremptory writs of prohibition issue forbidding respondents from further proceedings in the suit entitled W. S. Brown v. Porteus R. Burke, Chairman Democratic Executive Committee et al., No. —— of the civil docket of the Nineteenth Judicial District Court in and for the parish of Iberia, state of Louisiana, and it is further ordered that respondents pay all the costs of this proceeding.